<u>NOT FOR PUBLICATION</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEROME KEE, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | Civil No. 04-0842 (JBS) |
| v. | **OPINION** |
| CAMDEN COUNTY, et al., | |
| Defendants. | |

APPEARANCES:

Wayne Powell, Esq.
POWELL & BALTIMORE, PC
101 Tarragon Building
811 Church Road
Cherry Hill, NJ 08002
    Attorney for Plaintiff

Deborah Silverman Katz, County Counsel
Donna M. Whiteside, Assistant County Counsel
OFFICE OF CAMDEN COUNTY COUNSEL
Camden County Courthouse
520 Market Street, 14th Floor
Camden, NJ 08102-1375
    Attorney for Defendants

**SIMANDLE**, District Judge:

    This matter comes before the Court upon the motion of Defendants Camden County, the Camden County Prosecutor's Office and three individual employees of the Camden County Prosecutor's Office to dismiss for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(c).  See Fed. R. Civ. P. 12(c).  Plaintiff, Jerome Kee,

brought this action under state law and 42 U.S.C. § 1983[1] alleging disparate treatment and racial discrimination while employed as an investigator with the Camden County Prosecutor's Office.  His complaint alleges that he was subjected to a hostile working environment due to his race, and that he was denied opportunity for promotion to more desirable positions, before being "constructively discharged."  For the reasons expressed below, Defendants' motion to dismiss will be denied in part and granted in part.  The Court will grant Defendants' motion to dismiss with respect to Plaintiff's claim of intentional infliction of emotional distress against Camden County, the Camden County Prosecutor's Office and the individual defendants.  The Court will deny Defendants' motion to dismiss Plaintiff's claims for violation of the New Jersey Law Against Discrimination and violation of 42 U.S.C. § 1983.

**I.   BACKGROUND**

   **A.   Facts**

Plaintiff is Jerome Kee ("Plaintiff"), an African American male who, from August, 1993 through December, 2001, was employed at the Camden County Prosecutor's Office as an investigator. (Complaint ¶¶ 1, 7.)  Defendants are the County of Camden (the "County"), the Camden County Prosecutor's Office (the

---

[1] Although Plaintiff's Brief makes various references to Title VII of the Civil Rights Act of 1964, Plaintiff has not brought any claim under Title VII herein.

"Prosecutor's Office") and three former or current employees of the Prosecutor's Office: former Camden County Prosecutor Lee Solomon ("Solomon"), Assistant County Prosecutor Leslie Dicker ("Dicker") and Chief of Investigations for the Prosecutor's Office Thomas Hews-Eddinger ("Hews-Eddinger").[2]  (Id. ¶¶ 2-5.)

From all accounts, it appears that Plaintiff performed his duties in a professional, competent and satisfactory manner throughout the course of his employment with the Prosecutor's Office.[3] (Id.; Def.'s Br. at 3.)  In 2001, Plaintiff was transferred to the narcotics division of the Prosecutor's Office. (Def.'s Br. at 3.)  According to Plaintiff, sometime in November 2001, the Prosecutor's Office commenced an investigation into Plaintiff.  (Compl. § 10.)  Defendants state that the Prosecutor's Office began investigating Plaintiff after receiving information that Plaintiff's father had "tipped off" a criminal suspect to an ongoing investigation by the Prosecutor's Office. Such investigations into the conduct of an investigator, according to Defendants, were not unusual when an investigator was accused of wrongdoing by a criminal suspect or defendant.

---

[2] Solomon, Dicker and Hews-Eddinger shall be referred to collectively as the "Individual Defendants."  The County, the Prosecutor's Office, Solomon, Dicker and Hews-Eddinger shall be referred to collectively as, the "Defendants."

[3] In fact, Defendants' brief in support of their motion states that the Prosecutor's Office "has never taken the position that [Plaintiff] was not an exemplary employee during the majority of his time of employment." (Def.'s Br. at 3.)

(Def.'s Br. at 3.)  During the course of the investigation, Plaintiff's father, who was not identified as the "target" of the investigation, and Plaintiff himself were subpoenaed to testify before the Grand Jury in New Jersey Superior Court, Camden County.  (Compl. § 10.)  During the course of the Grand Jury testimony, Defendant Dicker repeatedly questioned Plaintiff about his eight-year-old employment application to the Prosecutor's Office.  (Id.)  Neither Plaintiff nor his father was ever charged with any wrongdoing and, in fact, no indictment was ever returned in the matter.  (Id.)

According to Plaintiff, Defendant Dicker then sought to gain access to a transcript of the Grand Jury testimony.  (Id. at 11-12.)  Despite a court order denying Dicker access, Dicker obtained a transcript through other channels.  (Id. at 11.)  Plaintiff alleges that Dicker then began a "frivolous administrative investigation" into Plaintiff.  (Id. at 11-12.)  According to Plaintiff, Defendants' actions in furtherance of the administrative investigation "created an intolerable working environment" for Plaintiff.  (Id. at 13.)  At the same time, according to Plaintiff, Defendants routinely ignored conduct of white employees that constituted violations of New Jersey state law.  (Id.)

By November of 2001, Plaintiff alleges that the conditions of his employment at the Prosecutor's Office significantly

4

worsened.  Specifically, Plaintiff states that Defendants caused Plaintiff's office key card to be deactivated thereby denying Plaintiff access to the Prosecutor's Office while he was still actively employed there as an investigator.  (Id. at 14.) Plaintiff states that he was "systematically and deliberately harassed because of his race....[and that the actions of Defendants] were designed to create intolerable working conditions" for Plaintiff.  (Id. at 19.)  Plaintiff claims that he was constructively discharged by the Prosecutor's Office on or about December 1, 2001.  (Id.)

   Plaintiff claims that the Defendants "engaged in unlawful employment practices with the purpose and effect of denying Plaintiff...equal opportunity for employment" by: (1) maintaining different standards for white employees while denying Plaintiff the opportunity of advancement to higher positions; (2) assigning African American employees to less desirable jobs while systematically promoting white employees to more desirable jobs; and (3) using and manipulating policy directives and guidelines (such as the Office Administrative Guidelines Manual) in such a manner as to discriminatorily discipline Plaintiff.  (Compl. 15-16.)  He alleges he was constructively discharged on December 1, 2001.  (Id. at 1.)

   **B.   Procedural History**

   Plaintiff originally filed his Complaint in New Jersey

Superior Court, Camden County claiming (1) violation of New Jersey Law Against Discrimination (Count I); (2) violation of 42 U.S.C. § 1983 (Count Two); intentional infliction of emotional distress (Count Three); and breach of the implied covenant of good faith and fair dealing (Count Four).  Defendants removed this matter to this Court on February 25, 2004 and answered Plaintiff's Complaint on March 8, 2004.  For approximately the next 18 months, the Court entered a series of scheduling orders extending the time for the parties to conduct discovery.  Finally, on February 7, 2006, Defendants filed this motion to dismiss[4] to which Plaintiff filed opposition on March 10, 2006.  Defendants did not file a reply to Plaintiff's opposition.

## II.   **STANDARD OF REVIEW**

This Court has jurisdiction over Plaintiff's § 1983 claims pursuant to 28 U.S.C. §§ 1331 and 1343, and it has supplemental jurisdiction over Plaintiff's claims arising under the NJLAD and the New Jersey Tort Claims Act, pursuant to 28 U.S.C. § 1367(a).  Defendants move for dismissal under Rule 12(c), Fed. R. Civ. P.[5]

---

[4] Defendants have not addressed Count Four (breach of the implied covenant of good faith and fair dealing), and this Court will likewise not address it in this Opinion.

[5] Rule 12(c) of the Federal Rules of Civil Procedure provides:

> (c)   Motion for Judgment on the Pleadings.  After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings.  If, on a motion for judgment on the

Specifically, Rule 12(h)(2), Fed. R. Civ. P. provides that a defense of a failure to state a claim upon which relief can be granted may be made by a motion for judgment on the pleadings under Rule 12(c).  See Fed. R. Civ. P. 12(h)(2).  The district court hearing the motion to dismiss under Rule 12(c) must apply the same standards as if the plaintiff had filed a motion under Rule 12(b)(6), Fed. R. Civ. P.  See Turbe v. Government of Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991); see also 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1367 (3d ed. 2004)("The Rule 12(c) judgment on the pleadings procedure primarily is addressed to . . . the function of disposing of cases on the basis of the substantive merits of the parties' claims and defenses as they are revealed in the formal pleadings.")[6]

---

>pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one of summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed. R. Civ. P. 12(c).

[6] In their motion papers, Defendants have included matters outside of the pleadings in their motion to dismiss.  Under Rule 12(c), a court may treat such a motion as one for summary judgment and adjudicate it "as provided in [Federal Rule of Civil Procedure] 56."  Fed. R. Civ. P. 12(c).  "If a court decides to rule on such a motion under Federal Rule 56, rather than under Federal Rule 12(b)(6), it must advise the non-moving party so that it may submit materials to counter the additional evidence presented by the moving party."  See R. Bartkus, N.J. Federal Civil Procedure, § 7-5, at 185 (1999) (citing Carter v. Stanton,

A motion under Rule 12(b)(6) must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  A district court must accept any and all reasonable inferences derived from those facts.  Unger v. Nat'l Residents Corp. v. Exxon Co., U.S.A., 761 F. Supp. 1100, 1107 (D.N.J. 1991); Gutman v. Howard Sav. Bank, 748 F. Supp. 254, 260 (D.N.J. 1990).  Further, the court must view all allegations in the complaint in the light most favorable to the plaintiff.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

It is not necessary for the plaintiff to plead evidence, and it is generally not necessary to plead the facts that serve as the basis for the claim.  See Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977); In re Midlantic Corp. Shareholder Litig., 758 F. Supp. 226, 230 (D.N.J. 1990).  The question before

---

405 U.S. 669, 671 (1972)).  However, "the court is not obligated to consider the supplemental materials and may decide the motion to dismiss strictly on the pleadings..." in accordance with Fed. R. Civ. P. 12(b)(6) or 12(c).  Id. (emphasis added)  Because Defendants' notice of motion states that they are moving under Rule 12(c), the Court holds that Rule 12(b)(6) rather than Rule 56 is the appropriate vehicle to consider Defendants' arguments. The Court notes that it is Defendants who chose to bring a motion to dismiss rather than a motion for summary judgment (which they certainly could have done considering the amount of discovery the parties have conducted).

the court is not whether plaintiff will ultimately prevail; rather, it is whether he can prove any set of facts in support of his claims that would entitle him to relief.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  In other words, in deciding a motion to dismiss, a court should look to the face of the complaint and decide whether, taking all of the allegations of fact as true and construing them in a light most favorable to the nonmovant, plaintiff's allegations state a legal claim. Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990).

**III. DISCUSSION**

    **A.    Plaintiff's Claims under New Jersey Law Against Discrimination**

New Jersey's Law Against Discrimination (NJLAD) makes it an unlawful employment practice, or unlawful discrimination "for an employer, because of the race, creed, color, national origin, ancestry, . . . of any individual . . . to discriminate against such individual in compensation or in terms, conditions or privileges of employment."  N.J. Stat. Ann. 10:5-12(a).  To establish a prima facie case of race discrimination under the NJLAD, a plaintiff must prove by a preponderance of evidence that he was (1) a member of a protected class; (2) qualified for the position he was seeking; (3) dismissed or not promoted despite being qualified; and (4) accorded less favorable treatment than those persons outside the protected class, which permits an

inference of race discrimination.  See Hankins v. Temple Univ., 829 F.2d 437, 440 (3d Cir. 1987); McKenzie v. Merck & Co., No. 05-0525, 1993 U.S. Dist. LEXIS 16836 , *18 (D.N.J. 1993).  Once a plaintiff has satisfied this four part test, and has thereby established a prima facie case, the court must conduct a burden-shifting analysis established by the U.S. Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); see also Andersen v. Exxon Co., U.S.A., 89 N.J. 483 (1982).[7]

Defendants view Plaintiff's claim under the NJLAD as a "failure to promote" case.  (Def.'s Br. at 8.)  To this end, Defendants argue that Plaintiff has failed to submit any evidence to prove its prima facie case, namely that (1) Plaintiff applied for and was qualified for promotion within the Prosecutor's Office; (2) Plaintiff was rejected despite adequate qualifications; and (3) after rejection, the position Plaintiff sought to be promoted to

---

[7]  Under this burden-shifting analysis, the plaintiff bears the burden of persuading the trier of fact (by the preponderance of the evidence) that there has been actionable discrimination (satisfying the plaintiff's prima facie case).  If a plaintiff succeeds in making out a prima facie case, the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason for the action at issue.  See Andersen v. Exxon Co., U.S.A., 89 N.J. 483, 492 (1982).  If the defendant successfully articulates a legitimate, non-discriminatory reason for the employment action, the plaintiff bears the burden of negating defendant's showing by demonstrating that the proffered reason is a pretext for unlawful discrimination.  See id.  Despite the shift of the burden of production to defendant, the plaintiff bears the burden of persuasion throughout the case.  See Texas Dept. of Cmty Affairs v. Burdine, 450 U.S. 248 (1981).

10

remained open.[8]

The fact that Defendants' argument centers on Plaintiff's lack of evidence demonstrates that Defendants misunderstand the standards that this Court must apply in ruling upon a Rule 12(c) motion. It is not necessary that Plaintiff plead evidence in his Complaint. The issue before this Court at juncture in the litigation is not whether Plaintiff will ultimately prevail in his NJLAD claim but whether Plaintiff can prove any set of facts in support of his claim that would entitle him to relief. See Hishon, 467 U.S. at 73. As such, a motion under Rule 12(c) must be denied unless it appears that Plaintiff has failed to state a legal claim. Markowitz, 906 F.2d at 103.

This Court cannot say that there is no set of facts which Plaintiff could prove that would entitle Plaintiff to recover under NJLAD or that Plaintiff has failed to state a legal claim. In the present case, Plaintiff has alleged that he is an African American (a protected class) and that his job performance evaluations were consistently satisfactory. (Compl. ¶ 1, 21.) Plaintiff also claims that on approximately December 1, 2001, he was "constructively and discriminatorily discharged" from his

---

[8] Defendants emphasize that this Court has no factual basis to support Plaintiff's belief that he should be promoted or cite "a single instance when he applied for and was not hired." In support of their position, Defendants cite Dungee v. Northeast Foods, Inc., 940 F. Supp. 682, 686-87 (D.N.J. 1996).

employment with the Prosecutor's Office "without cause or legitimate business reasons" and was denied promotion in a discriminatory manner.  (Id. ¶ 22.)  Plaintiff will have to prove his allegations -- namely, that he was qualified for certain promotions for which he applied, was not promoted despite being qualified and was accorded less favorable treatment than those persons outside the protected class.  At this stage in this case, then, this Court finds that his allegations are sufficient to deny Defendants' motion to dismiss Plaintiff's NJLAD claim.[9]

   **B.   Plaintiff's Claim under Section 1983**

Although the claims alleged in Count Two are not entirely clear, Plaintiff brings an action under 42 U.S.C. § 1983 apparently alleging that Defendants County, Solomon, Dicker and Hews-Eddinger violated her Fourteenth Amendment equal protection rights.  (Compl. ¶¶ 23-24.)[10]  The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws."

---

[9] If in fact, as Defendants allege, Mr. Kee did not apply for any promotion to a position for which he was qualified and not selected, then there would be no factual basis for the allegation of denial of promotional opportunities, and the Court would expect Plaintiff to abandon such a claim, consistent with counsel's duties under Rule 11, Fed. R. Civ. P.

[10] While the Complaint fails to specify the facts associated with this claim, the Court assumes that Plaintiff is referring to Defendants' failure to promote him, an African American male, while regularly promoting equally or lesser qualified white mails.

12

U.S. Const., Amdt. 14, § 1. An allegation of racial discrimination in violation of the Constitution's guarantee of equal protection cannot survive unless the plaintiff establishes that the defendant acted with discriminatory intent. See Washington v. Davis, 426 U.S. 229, 241 (1976). Additionally, local governing bodies can be sued directly under Section 1983 for "monetary, declaratory, or injunctive relief [only] where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690 (1978). Thus, in order to establish liability on the part of the County and the Prosecutor's Office, Plaintiff must show that the execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury. See id. at 694. In the case of either policy or custom, a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom. See Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990).

Defendants argue that Plaintiff has failed to show that Defendants violated Plaintiff's equal protection rights. According to Defendants, Plaintiff has failed to show that

members of minority groups were promoted in the Camden County Prosecutor's Office at a different rate than white males. (Def.'s Br. at 11.)  Furthermore, Defendants argue that Plaintiff has presented "no proof of discriminatory animus or effect" and has failed to present evidence that he was treated differently from similarly situated individuals and thus, Plaintiff has failed to show facts necessary to sustain his burden of proof on an equal protection claim.  (Id.)[11]

Again, Defendants misunderstand the current procedural posture.  Because Defendants chose to move to dismiss under Rule 12(c) (and this Court must apply the standards of a Rule 12(b)(6) motion), this Court can only grant Defendants' motion if the Court concludes that Plaintiff has failed to state a legal claim (i.e., that there is no set of facts which Plaintiff could prove that would entitle Plaintiff to recover under Section 1983.)  It is not necessary that Plaintiff plead evidence or to file opposition affidavits of fact as if this were a summary judgment motion under Rule 56.  Based on the allegations set forth in the Complaint, this Court cannot conclude that Plaintiff failed to state a claim for relief under Section 1983.

---

[11] Again, this Court does not adjudicate whether any of these allegations have a basis in fact.  If Defendants file a summary judgment motion, Plaintiff will be required to come forth with sufficient factual evidence from which a reasonable jury could find in his favor under the standard of Rules 56(c) and (e), Fed. R. Civ. P.

In the Complaint, Plaintiff claims that Defendants, acting under color of state law, denied Plaintiff an equal opportunity for employment by (1) maintaining a different standard for white employees while denying advancement opportunities for African Americans and (2) assigning African American employees to less desirable jobs while systematically promoting white employees to more desirable jobs.  (Compl. ¶ 15.)  Again, such allegations state a claim for denial of equal protection cognizable under § 1983, provided that Plaintiff is able to prove that these allegations are true and that he personally suffered harm in his employment caused by these policies.  Plaintiff has also sufficiently plead allegations for his claim of municipal liability on the part of the County and Prosecutor's Office. Specifically, Plaintiff alleges that the County and Prosecutor's Office "us[ed] policy directives and guidelines, with the use of the Office Administrative Guidelines Manual . . . [to] manipulate[] the Office Administrative Guidelines Manual in such a manner as to discriminatorily discipline [Plaintiff] while providing white employees more lenient discipline" and did so by "acting under State law by statute, ordinance, regulation, custom or uses . . . ."  (Id. ¶¶ 16, 24.)

    **C.    Plaintiff's Claim for Intentional Infliction of Emotional Distress**

Under New Jersey law, to maintain a claim for intentional infliction of emotional distress, a plaintiff must show that (1)

15

the defendant acted intentionally or recklessly, (2) the conduct was so outrageous in character and extreme in degree as to go beyond all bounds of decency, (3) the defendant's actions were the proximate cause of the emotional distress and (4) the distress suffered was so severe that no reasonable person could be expected to endure it.  See Buckley v. Trenton Sav. Fund Soc., 111 N.J. 355, 366 (1988); Turner v. Wong, 363 N.J. Super. 186, 199-200 (App. Div. 2003.)  Conduct is "extreme" if it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. (citing Restatement (Second) of Torts § 46, comment d (1965)).

    The Third Circuit and New Jersey Supreme Court have both specifically addressed what constitutes intentional infliction of emotional distress in an employment context.  "Only in very [few] instances has conduct in the employment context risen to th[e] necessary level of outrageousness" to be actionable as intentional infliction of emotional distress. Nichols v. Acme Markets, Inc., 712 F. Supp. 488, 495 (E.D. Pa. 1989).  In Buckley, the New Jersey Supreme Court held that "it is extremely rare to find conduct in the employment context which will rise to the level of outrageousness necessary to provide a basis for recovery."  Buckley, 111 N.J. at 366.  Indeed, addressing

intentional infliction of emotional distress stemming from workplace sexual harassment, the Third Circuit noted that "as a general rule, sexual harassment alone does not rise to the level of outrageousness necessary to make out a cause of action for intentional infliction of emotional distress." <u>Andrews v. City of Philadelphia</u>, 895 F.2d 1469, 1487 (3d Cir. 1990)(such a cause of action is present only where the employer both sexually harasses the employee and retaliates against her from turning down sexual propositions).  In the context of workplace racial discrimination, other courts have held that "[r]acial discrimination alone, like sexual harassment alone, does not state a claim for intentional infliction of emotional distress." <u>Nichols</u>, 712 F. Supp. at 495. (E.D. Pa. 1989).

Defendants argue that Plaintiff cannot demonstrate that Defendants' investigation into Plaintiff and his family and any alleged discrimination was so extreme as to be deemed "outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency."  (Def.'s Br. at 13.)  In this case, Plaintiff's Complaint fails to meet the high bar for what constitutes a cause of action for intentional infliction of emotional distress in an employment context.  Plaintiff has not alleged anything other than racial discrimination which, without more, is actionable as intentional infliction of emotional distress only if the Defendants' actions were utterly

17

intolerable.  While Plaintiff has pled that Defendants' conduct inflicted "severe emotional distress," Plaintiff has not satisfied the requirement that he plead that Defendants' actions were so outrageous in character "as to go beyond all possible bounds of decency" and "utterly intolerable in a civilized community."  <u>Buckley</u>, 111 N.J. at 366.  In this case, Plaintiff has not pled any overt racist words, gestures, conduct or threats towards him; he has pled only circumstances from which he alleges that a jury will conclude that race played a role in his alleged mistreatment on the job.  Thus, Plaintiff's claim of intentional infliction of emotional distress must be dismissed.

In the alternative, even if Plaintiff's pleadings met the standard in New Jersey for what constitutes intentional infliction of emotional distress, Plaintiff cannot maintain this claim against the County and Prosecutor's Office.  Under New Jersey law, a public entity is not liable for the acts of a public employee constituting "a crime, actual fraud, actual malice, or willful misconduct."  N.J. Stat. Ann. 59:2-10 (West 2000); <u>see</u> <u>also</u> <u>Fuchilla v. Layman</u>, 109 N.J. 319, 339 (1988).  Courts in this District have interpreted Section 59:2-10 of the New Jersey Tort Claims Act to bar public entities from liability for claims of intentional torts, including claims for intentional infliction of emotional distress.  See <u>Soto v. City of Newark</u>, 72 F. Supp. 2d 489, 497 (D.N.J. 1999)(City of Newark cannot be

18

liable for intentional infliction of emotional distress).

Here Defendants Camden County and the Prosecutor's Office are "public entities" under the New Jersey Tort Claims Act.  See N.J. Stat. Ann 59:1-3; see also English v. Newark Housing Auth., 138 N.J. Super. 425 (App. Div. 1976).  As such, the County and the Prosecutor's Office cannot be held liable for the alleged intentional torts of their employees, Solomon, Dicker and Hews-Eddinger and must be dismissed.

**IV.  CONCLUSION**

For the reasons discussed above, Defendants' motion to dismiss will be granted in part and denied in part.  Defendants' motion to dismiss will be granted as to Plaintiff's claim of intentional infliction of emotional distress.  As such, this claim will be dismissed.  Defendants' motion to dismiss will be denied, however, as to all other claims alleged in Plaintiff's Complaint.[12]

The accompanying Order is entered.

**September 28, 2006**          **s/ Jerome B. Simandle**
Date                             JEROME B. SIMANDLE
                                 United States District Judge

---

[12] The Court notes that neither party addressed Plaintiff's claim of breach of covenant.  As such, this Court will not dismiss this claim, but expresses no opinion on the viability of this claim.